## J. W. Rush v. J. N. Browning, District Judge.

### No. 2203. Decided December 21, 1910.

**1.—Partnership—Access to Books.**

A partner has the right to have access to and inspection of the books and accounts of the partnership transactions where kept by or under the direction of his co-partner. (P. 652.)

**2.—Same—Books of Bank.**

Where the only books and account of the transactions of a partnership between defendant and his co-partner, who was president and nearly sole owner of a national bank, plaintiff in the suit, were kept on the books of the bank under direction of the president, the defendant was entitled to inspection of so much of the books of the bank as related to the partnership transactions for the purpose of preparing his defense, and their production for use as evidence in the case; and this right the trial court could be compelled by mandamus to award him; if refused. (Pp. 651–653.)

**3.—Same—Discretion of Court.—**

In asking, for the protection of defendant, such orders for the production and examination of the books of a bank and their use in evidence in an action arising out of partnership transactions between defendant and the president of the bank, shown only by the books of the latter, the trial judge should exercise such discretion as to the form of orders made as to protect the bank against improper disclosure of its business not relating to matters in issue in such suit. (P. 653.)

**4.—Same—Mandamus.**

The Supreme Court will not, by writ of mandamus, require a district judge to issue an order compelling the production of the books of a bank on the taking of depositions of its president by a notary public, where his conduct shows no disposition to deny relator his rights in the matter, but only a proper exer-

cise of his judicial discretion in guarding the rights of others while securing those of relator.    (Pp. 653, 654.)

Original application by Rush to the Supreme Court for writ of mandamus against Browning as district judge.

*Cooper & Stanford* and *L. C. McBride,* for relator, cited: Woffard v. Farmer, 90 Texas, 651; Ex parte Johnson, 54 Texas Crim. Rep., 113; Crocker v. Conrey, 140 Calif., 213; In re Scott, 96 Pac., 385; 29 Cyc., 1086; Ex parte Krieger, 7 Mo. App., 367; Gharst v. St. Louis Transit Co., 91 S. W., 455; Ex parte McKee, 18 Mo., 599; Stirneman v. Smith, 100 Fed., 600; Crocker-Wheeler Co. v. Bullock, 134 Fed., 241; 4 Encyc. of Evidence, 420, and cases; United States v. Terminal R. R. Assn., 148 Fed., 486; Cullers v. Birge, 34 S. W., 986; 4 Ency. of Evidence, 808; Simon v. Ash, 1 Texas Civ. App., 202.

*Madden, Truelove & Kimbrough,* for respondent.—This court is not given by the Constitution and statutes any jurisdiction to grant a writ of mandamus against a District Court. Constitution of Texas, art. 5, sec. 3; Revised Statutes of Texas, title 27, art. 946; Teat v. McGaughey, 85 Texas, 487; Betts v. Johnson, 96 Texas, 364.

. Relator has failed to show any clear right in himself to inspect or examine, or to have his counsel inspect or examine, the books of the First National Bank in advance of the trial of the case brought by it against relator and wife and still pending in the District Court of Potter County. Love v. Keowne, 58 Texas, 191; Cargill v. Kountze, 86 Texas, 386, 396; 14 Cyc., 351; Sayles v. Bradley & M. Co., 92 Texas, 406.

There was no plain, clear duty resting upon the district judge or District Court to grant the motion filed by the relator in the District Court of Potter County, July 11, 1910. Rev. Stats., arts. 1448, 2264; 2283; 2 Ency. of Evidence, 110; Sayles v. Bradley & M. Co., 92 Texas, 406; Cahn v. State, 27 Texas Crim. App., 709; Creswell v. State, 14 Texas Crim. App., 1; 14 Ency. Evidence, 574; De Poyster v. Baker, 89 Texas, 159, and cases cited; Hale v. Henkel, 201 U. S., 43, 76, 88.

This suit seeks to compel the respondent as a judicial officer, to determine a question of law in a particular manner and not according to his judicial judgment or discretion. De Poyster v. Baker, 89 Texas, 159; Matlock v. Smith, 96 Texas, 213; Aycock v. Clark, 94 Texas, 375; Arberry v. Beavers, 6 Texas, 464.

The petition fails to set out any specific duty which the law enjoined upon the respondent to perform on behalf of the relator under the circumstances set forth in the petition. Matlock v. Smith, 96 Texas, 213; Arberry v. Beavers, 6 Texas, 464; De Poyster v. Baker, 89 Texas, 159; Houston, T. & B. Ry. Co. v. Randolph, 24 Texas, 317.

Mr. Justice Brown delivered the opinion of the court.

Relator filed his petition in this court praying for a writ of mandamus to the Honorable J. N. Browning, judge of the District Court of Potter County, upon substantially the following statement of facts:

Relator executed to the First National Bank of Amarillo his promissory note for $12,000, in which he was joined by his wife. The note called for interest and for attorney's fees in case of suit. The bank brought suit against the relator and his wife, in the District Court of Potter County, upon the note, to which relator made defense, and, upon agreement by the parties, took out a commission addressed to Miss Mary McSpaddin, a notary public of the said county, directing that she take the depositions of W. H. Fuqua on oral questions.

It is alleged that W. H. Fuqua was president of the plaintiff bank, the capital stock of which was $200,000, and that the said Fuqua owned all of the stock except $4,000, and also that he personally supervised and controlled the business of the bank. Relator alleges that he and Fuqua were for a number of years partners in purchasing cattle and in other kinds of business connected with the said partnership in which the relator did the work of buying and the active work of the partnership and that Fuqua was to furnish all of the funds without interest. It is alleged that the accounts of the business between Fuqua and the relator were kept by Fuqua himself, the latter directing that the accounts be kept upon the books of the said bank, which was done. Relator alleges that he trusted the matter to Fuqua and to the bank to keep the said accounts and kept no memorandum of his own by which he could tell the state of the accounts between himself and the bank or the said partner, Fuqua. It is alleged that the payments made by relator upon the partnership business, as well as upon his indebtedness to the bank, were all paid into the bank under the direction of the said Fuqua and by him such payments were charged to or credited upon such account as the said Fuqua should direct, of which the relator had no knowledge, therefore the said relator is not able to prepare his defense to the said suit. Relator alleges that he has paid more than sufficient to discharge the note sued on if the same had been properly applied, and, if it has not been applied to the satisfaction of the note sued on, then it is on deposit to his credit in the said bank under the control and management of Fuqua; and that he is unable to ascertain the condition of said account so as to make his defense without an inspection of the books of the partnership now in the possession and under the control of Fuqua as president of the said bank and as partner with the relator. The allegations in the petition for mandamus are ample to show, if true, that the note has been discharged and to show that the evidence of its payment is in the possession of the plaintiff bank in the shape of accounts kept upon its books by its consent and under the direction and control of its president. It is alleged in the petition that at the examination of the witness Fuqua before the notary public questions were asked him to draw out the state of the account between himself and the said relator, as shown upon the said books, to which the witness answered that he did not know, and, being asked whether the books would show those conditions or not, he stated they would, but, upon request that he bring the books for inspection and examination, he refused to do so, and upon further request that he examine the books himself and make a state-

ment as to the condition of the account, he declined to comply with the request, so that relator was denied the benefit of the account as kept upon the books of the partnership as aforesaid. It is further alleged that the relator made a motion in that case in the District Court of Potter County, calling upon the presiding judge, the Honorable J. N. Browning, to direct and order the said Fuqua to produce the books before the notary public for examination by the relator, or to give relator access to them in order that he might ascertain the facts necessary to make his defense against the said note, which motion the said judge overruled, as it seems, upon the ground that he had no authority to order the books to be produced before the notary public, but stating that he would require their production in court when the case should be called for trial and would give the relator an opportunity to inspect them and all proper use of them.

The questions presented to us upon this application are, has the relator a right to inspect the books, and has the district judge the discretion to refuse to order the books produced before the notary public and to require them to be produced for inspection in some other way or at some other time.

The prayer in the motion reads as follows:

"Wherefore, this defendant prays that this Honorable Court issue its order citing the said W. H. Fuqua, to show cause why he should not be adjudged guilty of contempt of this court for his contumacious conduct as aforesaid, and commanding and compelling the said W. H. Fuqua, to produce before the said notary public all the records, documents, etc., as called for in said subpoena duces tecum to the end that said notary public may proceed with the examination of such witness with the aid of said documents, data, etc., or if this court, or the Honorable Judge thereof, should feel that justice would better be subserved by compelling said witness to produce such records, documents, data, etc., before this court or before some commissioner or person duly designated and appointed by this court subject to inspection by this defendant and his counsel then this defendant prays for such order, and not only so, but for such other or further orders of this court, or the Honorable Judge thereof, in the premises as may be meet, just and proper, and as may subserve the ends of justice and divert the impending miscarriage thereof, and this defendant prays for all such other or further orders in the premises and for relief, both general and special, as law and equity may suggest or award."

There seems to be no conflict in the authorities as to the right of relator, if he and Fuqua were partners, to have access to the account books of the partnership for the purpose of preparing a defense to the note sued upon in this case. Howlett v. Hall, 55 Hun, 614; Kelly & Frazier v. Eckford, 5 Paige, Ch., 548; Stebbins v. Harmon, 17 Hun, 446.

The allegations of the petition for mandamus with the accompanying exhibits show that relator and Fuqua were partners as charged in the petition herein, and we conclude that the entries and items in the books of the plaintiff bank were in the nature of partnership accounts, having been entered therein under Fuqua's direction and

with the consent of the bank, and that, to the extent that those entries embrace matters with regard to partnership transactions, Rush had as much right to inspect them as did Fuqua. There is a difference between the right of a third person not interested in the partnership and the right of a partner to inspect the books of a firm. The third person can only secure that right by showing that it is necessary for his defense in the case or other equitable grounds, but a partner is entitled to the possession of the books for examination, because they belong to him as much as to his copartner. Veiller v. Oppenheim, 75 Hun, 25.

In the case of Veiller v. Oppenheim, cited above, the court said: "Where such relation is admitted, as in this case, whether such relation constitutes the plaintiff a partner, or a principal bringing business to the firm, or an employe entitled to a share of the profits, or a co-worker with them in the general business, we think, as argued by the respondent, that 'so long as the plaintiff in one manner or another, under one name or another, was entitled to a portion of the proceeds of the common venture,' a *prima facie* case is presented entitling those interested in that venture to an inspection, where necessary, of the books of account containing a record thereof, and to all the information that can be derived from them, and it is only where it is apparent that the application is made in bad faith that such inspection should be denied."

The fact that accounts were entered in the books of the bank in which its business with others is also kept suggests that the district judge might exercise his discretion to so frame an order as to protect the bank against any improper inspection of those portions of the book which do not concern relator.

The relator having an unqualified right to inspect the books, so far as the partnership transactions are concerned, it was the duty of the district judge to enforce that right by any reasonable method which would secure it to the relator and at the same time protect the bank from an improper interference with its business or the inspection of its transactions with other persons.

If the Honorable District Judge had refused to make any order, giving to Rush the right to inspect the books and to use them as might be necessary in the trial of the case, it would have been such an act as would call for the use of the writ of mandamus on the part of this court, because it is a plain, legal right of the relator to have those books, which the court could not deny. But the learned judge, who is made respondent in this case, shows by his answer, which is undisputed, that he proposed several methods by which to secure the right to the relator, and we are of opinion, from an inspection of the answer and all papers submitted in connection with it, that the respondent showed a proper judicial temper and attitude towards the parties in this case and a proper desire to secure to the one such rights as he had in the entries made and at the same time to give protection to other parties against an improper use of the books.

It was the duty of the district judge to secure to relator his right to inspect the books and to use them in the preparation and conduct of his defense, and the court might have ordered the books to be

produced before the notary at the examination of Fuqua, but the method to be adopted for producing and using the books was discretionary with the district judge. It must be reasonable and consistent with the rights and interests of all parties. This court can not control the discretion vested in the judge in this matter. De Poyster v. Baker, 89 Texas, 155.

The writ of mandamus is refused.